UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
NEXT GENERATION TECHNOLOGY, INC.   :
and PUSPITA DEO,   :
  :
                Plaintiffs,   :
  :
        - against -   :
  :
  :
UR. M. JADDOU, Director, U.S. Citizenship   :
and Immigration Services, et al.,[1]   :
  :
           Defendants.   :
-----------------------------------------------------------------X

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
**DOC #:**_____
**DATE FILED:** 5/12/2022

21-CV-1390 (PGG) (RWL)

**REPORT AND RECOMMENDATION
TO HON. PAUL G. GARDEPHE:
MOTION TO DISMISS**

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

      The United States Citizenship and Immigration Services ("USCIS") approved and then revoked its approval of H1-B visa status for Puspita Deo ("Deo"), a designated employee of the visa applicant Next Generation Technology, Inc. ("NGT"). NGT and Deo (collectively "Plaintiffs") filed an action challenging that decision, and the Court remanded the matter to USCIS for further consideration. On remand, USCIS reached the same conclusion.

      Plaintiffs now bring this action for declaratory relief pursuant to the Administrative Procedures Act ("APA"), claiming that USCIS arbitrarily and capriciously acted beyond the scope of remand and improperly raised grounds for its decision not previously addressed in any of the agency's prior notices or decisions. Plaintiffs request the Court to order Defendants to reinstate Deo's H-1B status, award attorney's fees and costs, and grant any equitable relief that may be available.

---

[1] Ur M. Jaddou, Alejandro Mayorkas, and Merrick Garland are automatically substituted for Larry C. Denayer, Peter T. Gaynor, and Jeffrey Rosen. *See* Fed. R. Civ. P. 25(d).

1

Defendants move to dismiss the complaint pursuant to Federal Rules Of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and for failure to state a claim.  Defendants assert that Plaintiffs' claims for relief are moot because the Court cannot provide any effectual relief, and thus the Court lacks subject matter jurisdiction.  The Court agrees and recommends that the motion be GRANTED.

## Background

The factual history of this case is extensive.  The case spans over a decade, and the administrative record consists of more than 1,200 pages.  To streamline matters, the Court incorporates by reference the factual background penned by Magistrate Judge Debra Freeman in her decision to remand, *Next Generation Technology, Inc. v. Johnson*, 328 F. Supp. 3d 252 (S.D.N.Y. 2017) ("*Next Generation I*").  Below is a summary of the factual and procedural background relevant to the instant motion.  As required on a motion to dismiss, the Court accepts as true all well-pled allegations of the Complaint and draws all reasonable inferences in favor of Plaintiffs, the non-moving parties.

**A.      The H-1B Nonimmigrant Visa Program**

The H-1B visa program enables U.S. employers to temporarily employ foreign nationals to work in "specialty" occupations that require both "theoretical and practical application of a body of specialized knowledge and attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States."  *Next Generation I*, 328 F. Supp. 3d at 257 (quoting 8 U.S.C. § 1184(h)(3)).  The regulations identify the standards and criteria a position must meet to be considered a specialty occupation, as well as the qualifications beneficiaries

2

must possess to be awarded the visa. See 8 C.F.R. § 214.2(h)(4)(iii)(A); §214.2(h)(4)(iii)(C)(1)-(4).

    To begin the process of acquiring an H-1B visa, an employer must file a petition, the Form I-129, with USCIS on behalf of the alien beneficiary. 8 U.S.C. § 1184(c)(1); 8 C.F.R. § 214.2(h)(4)(i)(B)(1). If the Form I-129 is approved, the beneficiary must take additional steps, such as interviewing and providing requested documentation to a consulate abroad, before obtaining a visa. 8 U.S.C. § 1184(c)(1); 8 C.F.R. § 214.1(a)(3). The dispute in this case arises from an application filed by NGT seeking to obtain an H1-B visa for Deo.

**B.**    **NGT's Application To Obtain An HB-1 Visa For Deo**

    NGT is "an information technology firm specialized in providing IT services, custom software solutions and development." (R. 256.[2]) As of the filing of this action on February 17, 2021, NGT had 45 employees and a gross annual income of approximately $6.5 million. (Compl. ¶ 14.) Deo is a native and citizen of India and has a Ph.D. in Computer Science from Dublin City University in Ireland. (Compl. ¶¶ 13, 16.)

    On April 1, 2009, NGT filed an H-1B Petition for Nonimmigrant Worker with USCIS to employ Deo in the specialty position of computer programmer for three years (the "Initial Petition"). (Compl. ¶ 16.) The period of employment was to be from October 9, 2009 to September 30, 2012. (Compl. ¶ 16.) On June 9, 2009, USCIS issued a Request for Evidence ("RFE") seeking additional information to clarify, among other matters, NGT's "employer-employee relationship with the beneficiary;" NGT provided the requested information on July 18, 2009. (Compl. ¶¶ 17, 18.)

---

[2] "R." refers to the certified administrative record (Dkt. 23).

On July 27, 2009, USCIS approved NGT's Initial Petition, placing Deo in valid status as a specialty worker for NGT from July 28, 2009 until September 28, 2012. (Compl. ¶ 19.)  Instead of taking the next step to apply for her H-1B visa at the U.S. consulate in Amsterdam, however, Deo left for the U.S. and re-entered on November 22, 2009 as a B-2 Nonimmigrant Visitor for a period not to exceed May 23, 2010.[3]  (Compl. ¶ 20; R. 66, 126.)  Still in need of a visa for the full employment period, NGT filed an amended H-1B Petition with USCIS on March 1, 2010 (the "Amended Petition") to amend DEO's status to that of an H-1B specialty worker.  (Compl. ¶ 20.)  On May 26, 2010, USCIS issued a decision construing the petition as a request for "change of status" from B-2 to H-1B and denying it for failure to submit the required $1,500 filing fee for initial H-1B petitions.  (Compl. ¶ 21.)  On June 9, 2010, NGT filed a second amended H-1B petition ("Second Amended Petition") with the proper $1,500, but USCIS returned the $1,500 as not required on the basis that Deo was already in valid H-1B status.  (Compl. ¶ 22.)  On August 2, 2010, USCIS issued another RFE on the Second Amended Petition, and NGT responded addressing each request and providing evidence.  (Compl. ¶¶ 23, 24.)

Determining that the Amended Petition contained false information, on September 26, 2010, USCIS issued a Notice of Intent to Revoke ("NOIR") the approval of the Initial Petition that had been granted in July 2009.  (Compl. ¶ 25.)  In response, on October 18, 2010, NGT responded to the NOIR and provided additional information and evidence of its business and employment relationship with Deo.  (Compl. ¶¶ 26, 27.)  Still, USCIS

---

[3] A B-2 non-immigrant visitor visa enables non-U.S. citizens to legally enter the United States temporarily for pleasure, tourism, amusement, visits with friends or relatives, and medical treatment.  *See* 22 C.F.R. § 41.31(b)(2)(i).  While on a B-2 visa, individuals are not eligible for employment in the United States.  8 C.F.R. § 214.1(e).

revoked approval of the Initial Petition on November 30, 2010, and denied the Amended Petition on December 14, 2010 as being the "same or similar to the previously approved petition" that had been revoked.  (Compl. ¶¶ 26-31.)  On December 16, 2010, NGT filed an appeal to the Administrative Appeals Office ("AAO") challenging revocation of the Initial Petition.  (Compl. ¶¶ 32-36.)  Almost two years later, on November 3, 2012, the AAO dismissed the appeal, finding the following: NGT had failed to establish that a "credible offer of H-1B caliber employment existed at the time of filing and for the duration of the beneficiary's requested stay" (R. 144); the "petitioner's lack of contracts, statements of work, or other such documentation precluded a finding that the beneficiary would be employed in a specialty occupation" (R. 144); NGT had failed to establish that the "petition was filed for non-speculative work for the beneficiary, for the entire period requested, that existed as of the time of the petition's filing" (R. 147); and that "the content of the NOIR comported with the regulatory notice requirements."  (Compl. ¶¶ 37,38; R. 143.)  NGT filed a motion to reconsider, but, after passage of almost another two years, the AAO issued a final denial of the motion on October 16, 2014.  (Compl. ¶¶ 40-45.)

## C.   *Next Generation I*

On July 20, 2015, Plaintiffs brought an action in this District challenging under the Administrative Procedure Act the final decision of USCIS revoking its approval of an H-1B visa petition and denial of its subsequently amended petition.  (Compl. ¶ 46.)  Plaintiffs moved for summary judgment claiming that the USCIS decisions were arbitrary and capricious;  Defendants cross-moved for summary judgment arguing that the administrative decisions were proper and entitled to deference.  (Compl. ¶ 47.)

On September 29, 2017, Judge Freeman issued her decision in *Next Generation I*, remanding administrative proceedings for reconsideration on the grounds that the agency "either disregarded evidence or failed to explain its reasons for rejecting evidence in the record that could have met the statutory requirements for an H-1B visa."   *Next Generation I*, 328 F. Supp.3d at 265.  The Court directed USCIS on remand "to reconsider its decisions regarding the H-1B visa petitions at issue here, in light of the evidence of Record favorable to Plaintiffs … and, if USCIS decides upon reconsideration to discount that evidence, it is directed to articulate its reasons for doing so."  *Id.* at 272-73.

**D.    The Agency's Actions On Remand**

Following remand on February 23, 2018, USCIS issued to NGT a notice of "intent to dismiss and request for evidence."  (Compl ¶¶ 61-62.)   The notice indicated the following reasons for the agency's intent to dismiss: (1) the Initial Petition was automatically revoked by filing of the Amended Petition, which effectively withdrew the first (and unused) H-1B petition; (2) NGT had misrepresented the facts on its initial application, in particular, failing to indicate that it was H-1B dependent;[4] (3) specialty work was unavailable because the Initial Petition misrepresented a project completion date; and (4) the Amended Petition reflected a change in the projected assignments to the

---

[4] A company is H1-B dependent if it meets one of the three standards: "(i) (A) The employer has 25 or fewer full-time equivalent employees who are employed in the U.S.; and (B) Employs more than seven H-1B nonimmigrants; (ii) (A) The employer has at least 26 but not more than 50 full-time equivalent employees who are employed in the U.S.; and (B) Employs more than 12 H-1B nonimmigrant[s]; or (iii) (A) The employer has at least 51 full-time equivalent employees who are employed in the U.S.; and (B) Employs H-1B nonimmigrants in a number that is equal to at least 15 percent of the number of such full-time equivalent employees."  20 C.F.R. § 655.736(a).  NGT qualified as an H-1B employer under 20 C.F.R. § 655.736(a)(ii).

beneficiary.  The notice of intent also posed a series of inquiries into Deo's employment, salary, and family relationship to NGT personnel.  (Compl. ¶ 62.)  Plaintiffs submitted a response claiming the notice of intent was beyond the scope of the District Court remand but responding to each of the agency's inquires.  (Compl. ¶ 63.)

On July 31, 2019, the AAO issued a final decision concluding that the Director of USCIS properly revoked approval of the Initial Petition, affirming the Director's denial of the Second Amended Petition, and finding that the Director acted consistently with the District Court's remand order.  (Compl. ¶ 65; *see* R. 812-30.)  The AAO concluded that "[o]nce the Initial Petition was revoked, the Second Amended Petition was no longer eligible for a numerical exemption from the H-1B cap and became subject to the usual H-1B cap-subject filing requirements."  (R. 828.)

**E.    The Instant Action**

Plaintiffs commenced this action on February 17, 2021, alleging that USCIS did not reconsider its decision as instructed by Judge Freeman but instead addressed issues that were not before the District Court and announced new grounds for revocation and denial that had not been included in any of the agency's prior notices or decisions. (Compl. ¶ 61.)  Defendants filed the instant motion to dismiss on August 17, 2021, and briefing was completed on November 17, 2021.  Judge Gardephe referred the motion to me for a Report and Recommendation.  (Dkt. 30.)

## **Legal Standards**

Defendants move to dismiss based on Federal Rule Of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction due to mootness, and Rule 12(b)(6) for failure to state a claim.

**A.      Rule 12(b)(1) Motion To Dismiss For Lack Of Subject Matter Jurisdiction**

Under Rule 12(b)(1), a pleading may be dismissed for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  A court must dismiss a claim if it "lacks the statutory or constitutional power to adjudicate it."  *Morrison v. National Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *aff'd*, 561 U.S. 247, 130 S. Ct. 2869 (2010).  "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence."  *Aurecchione v. Schoolman Transportation System, Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).  In deciding a Rule 12(b)(1) motion to dismiss, the Court "'must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff.'"  *Morrison*, 547 F.3d at 170 (quoting *Natural Resources Defense Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (internal quotation omitted)). Additionally, the Court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue …."  *J.S. ex rel. N.S. v. Attica Central Schools,* 386 F.3d 107, 110 (2d Cir. 2004); *see also Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court ... may refer to evidence outside the pleadings").

**B.      Rule 12(b)(6) Motion To Dismiss For Failure To State A Claim**

Under Rule 12(b)(6), a pleading may be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). A claim is facially plausible when the factual content pleaded allows a court "to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966).  In considering a motion to dismiss, a district court must "accept[ ] all factual claims in the complaint as true, and draw[ ] all reasonable inferences in the [non-moving party's] favor." *Lotes Co. v. Hon Hai Precision Industry Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (internal quotation marks omitted).  However, this tenet is "inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949-50.  "[R]ather, the complaint's [f]actual allegations must be enough to raise a right to relief above the speculative level, … *i.e.*, enough to make the claim plausible."  *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal quotation marks omitted).  A complaint is properly dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief."  *Twombly*, 550 U.S. at 558, 127 S. Ct. at 1966.

## Discussion

### I. USCIS Is Not Precluded From Raising Mootness

Before addressing the merits of Plaintiffs' mootness argument, the Court first looks at the threshold issue of whether Defendants are precluded from making the argument. As Plaintiffs would have it, Defendants' mootness and subject matter jurisdiction arguments are barred by issue and claim preclusion by Judge Freeman's previous decision in *New Generation I*.  More particularly, Plaintiffs argue that Judge Freeman

previously determined that Plaintiffs had standing to challenge the merits of the agency's decision under the APA and that the Court had subject matter jurisdiction to consider the challenge.   (Pl. Mem. at 4.[5])   Plaintiffs further contend that the issues raised by Defendants could have been presented in the case before Judge Freeman and now are precluded because they were not.  (Pl. Mem. at 10.)  Those arguments are unavailing.

First, Judge Freeman did not previously decide the issue raised here.   In *Next Generation I,* Judge Freeman held that NGT had standing to challenge USCIS' decision because "courts in this district have permitted employer-petitioners of visa applications, made on behalf of alien employee beneficiaries, to challenge final determinations of USCIS." 328 F. Supp. 2d. 264-65.  Judge Freeman declined to rule on whether Plaintiff Deo had standing but did find that some of the agency's decisions were arbitrary and capricious and directed USCIS to reconsider the evidence in the record.  *Id.* at 264, 272.

The standing issue resolved by Judge Freeman is entirely different than the issue raised by the instant motion, which is whether the claim asserted by Plaintiffs has been rendered moot.[6]  The doctrine of collateral estoppel – or issue preclusion – thus does not apply.[7]  *See*, *e.g.*, *Bader v. Goldman Sachs Group, Inc.*, 455 F. App'x 8, 9 (2d Cir. 2011)

---

[5] "Pl. Mem." refers to Memorandum Of Law In Opposition To The Defendants' Motion To Dismiss The Complaint (Dkt. 29.).

[6] As a secondary argument, Defendants do argue that Plaintiffs lack standing to proceed and advance the same reasons that render the instant dispute moot:. namely, that Plaintiffs' alleged injury cannot be redressed by a favorable decision of the Court due to passage of the relevant visa period and a cap on the number of visas that can be issued. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 1547 (2016) (to establish Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision").  Again, Judge Freeman did not address those issues.

[7] If any party is barred by preclusion, it would be Plaintiffs.  In *Next Generation I,* Judge Freeman held that the Court could not "reinstate" Deo's H-1B status because Deo was

("If the issues are not identical, there is no collateral estoppel") (internal citation omitted); *Burgos v. Hopkins*, 14 F.3d 787, 792 (2d Cir. 1994) (in order for issue preclusion to apply "[t]here must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action," and "there must have been a full and fair opportunity to contest the decision now said to be controlling") (internal quotation marks omitted).

Nor are Defendants precluded from asserting the mootness argument merely because they did not do so before Judge Freeman.  Under well-established law, federal subject matter jurisdiction can never be waived or forfeited; a party therefore may raise the issue at any point in a case.  *Alliance of American Insurers v. Cuomo*, 854 F.2d 591, 605 (2d Cir. 1988) ("The fact that neither party contested the District Court's authority to hear this aspect of the case does not act to confer jurisdiction on the Court since a challenge to subject matter jurisdiction cannot be waived and may be raised *sua sponte* by the district court"); *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) ("The absence of subject matter jurisdiction is non-waivable"); *Kontrick v. Ryan*, 540 U.S. 443, 455, 124 S. Ct. 906, 915 (2004) ("A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance").  Plaintiffs thus gain no ground by arguing that Defendants did not argue before Judge Freeman that the Court lacked subject matter jurisdiction due to mootness.

---

never an H-1B visa holder.  328 F. Supp. 2d. at 263.  Yet Plaintiffs again ask the Court to do just that.  (See Compl. ¶ 103.)

## II.  The Court Cannot Provide Relief Because Plaintiffs' Claims Are Moot

"The mootness doctrine is derived from Article III of the Constitution, which provides that federal courts may decide only live cases or controversies."  *Van Wie v. Pataki*, 267 F.3d 109, 113 (2d Cir. 2001).  "A case becomes moot when interim relief or events have eradicated the effects of the defendant's act or omission, and there is no reasonable expectation that the alleged violation will recur."  *Irish Lesbian & Gay Organization v. Giuliani*, 143 F.3d 638, 647 (2d Cir. 1998).  "When a case becomes moot, the federal courts lack subject matter jurisdiction over the action."  *Hassoun v. Searls*, 976 F.3d 121, 127 (2d Cir. 2020) (alteration and citation omitted); *Fox v. Board of Trustees of State University of New York*, 42 F.3d 135, 140 (2d Cir. 1994) (same); *see also Russman v. Board of Education of Enlarged City School District of City of Watervliet*, 260 F.3d 114, 118-19 (2d Cir. 2001) ("Whenever mootness occurs, the court – whether trial, appellate, or Supreme – loses jurisdiction over the suit, which therefore must be dismissed"); *Alston v. Coughlin*, 109 F.R.D. 609, 612 (S.D.N.Y. 1986) ("The mootness doctrine is an elemental limitation on federal judicial power, and its effect may not be waived by a party").

Defendants assert that Plaintiffs' claims are moot, and the Court thus lacks subject matter jurisdiction, because the Court cannot provide any effectual relief.  They advance two independent arguments for why the claims are moot.  First, there are no "validity dates" that can be approved for Plaintiff's applications; and second, there no longer are H-1B cap visa numbers available for the relevant years.[8]  USCIS thus cannot grant, and

---

[8] "The period of validity of a nonimmigrant visa is the period during which the alien may use it in making application for admission."  22 C.F.R. § 41.112(a).

the Court cannot award, H1-B visa status.  In response, Plaintiffs assert that Defendants'
failure to raise this jurisdictional argument at any previous stage in the litigation precludes
them from raising it now.  The Court agrees with Defendants.  The validity period for Deo's
unawarded H-1B visa expired over ten years ago, and there no longer are any visa
numbers that can be granted for the relevant period.  Accordingly, Plaintiffs' claim for H1-
B visa status is moot.  There is no equitable relief for the Court to grant, and so, the Court
lacks subject matter jurisdiction.  The argument is properly raised now because lack of
federal subject matter jurisdiction cannot be waived.

## A.     The Validity Period For Plaintiffs' H-1B Petition Is Expired

H1-B visas are approved for a specific period of time not to exceed three years –
the validity period.  *See* 8 C.F.R. § 214.2(h)(9)(iii)(A)(1) ("An approved petition classified
under section 101(a)(15)(H)(i)(b) of the Act for an alien in a specialty occupation shall be
valid for a period of up to three years but may not exceed the validity period of the labor
condition application");[9] *Dandamudi v. Tisch*, 686 F.3d 66, 70 (2d Cir. 2012) ("For
purposes of … the H1-B … visa[ ], the initial period during which the visa-holder can
legally remain and work in the United States is three-years")
(citing 8 C.F.R. § 214.2(h)(9)(iii)(A)(1)).  The validity period for NGT's H1-B application
was from October 1, 2009 to September 28, 2012.  (R. 103-107 (Filed Labor Condition

---

[9] The labor condition application – "LCA" – is a necessary component of an H1-B visa
petition.  Prior to filing a Form I-129, "a petitioner shall obtain a certification from the
Department of Labor that it has filed a labor condition application in the occupational
specialty in which the alien(s) will be employed."  8 C.F.R. § 214.2(h)(4)(i)(B)(1); *see also*
8 U.S.C. § 1182(n) ("No alien may be admitted or provided status as an H-1B
nonimmigrant in an occupational classification unless the employer has filed with the
Secretary of Labor an application" disclosing a range of details pertaining to the specialty
position and the relationship between the employer and beneficiary).

Application for Nonimmigrant Workers stating "end date of period of intended employment" as September 28, 2012); R. 607-616 (Form I-129, Petition for a Nonimmigrant Worker stating "validity dates" as October 1, 2009 to September 28, 2012).)  That period expired almost a decade ago.  The time period for which Plaintiffs sought a visa no longer exists.  If, as Plaintiffs seek, the Court were to reinstate the approval of the Initial Petition, Deo would have an approved Form I-129 with a valid employment period through 2012.  That is not an effectual remedy.  *See Zapata v. I.N.S.,* 93 F. Supp. 2d 355, 358 (S.D.N.Y. 2000) (court declined to grant Plaintiffs' request for an injunction because the date INS was required to rule by had passed and therefore the request was moot); *Sadowski v. U.S. I.N.S.*, 107 F. Supp. 2d 451, 454 (S.D.N.Y. 2000) ("When a relevant deadline … has passed, a request for relief is deemed plainly moot").

Despite the long-ago expiration of the validity period, Plaintiffs argue that the Court has the "power to reinstate the petition approval *nunc pro tunc* to allow Deo a fresh validity period."  (Pl. Mem. at 15.)  The regulations do enable a petitioner to file an amended or new petition to reflect any material changes in the terms and conditions of employment or training.  In such instance, however, the "petition must be accompanied by a current or new Department of Labor determination.  In the case of an H-1B petition, this requirement includes a new labor condition application."  8 C.F.R. § 214.2(h)(2)(i)(E).

The LCA included with Plaintiffs' Initial and Amended Petitions was based on information provided by NGT in 2009.  (R. 103-107 (LCA).)   That LCA comported with the statutory requirement that the employer provide attestations as to the labor market at the time of the filing.  *See* 8 U.S.C. § 1182(n)(1).  There is no LCA supporting a "fresh"

validity period more than ten years later.[10]   Of course, as Plaintiffs recognize, they are free to file a new labor condition application reflecting a change in the years for which the visa is now requested pursuant to 8 C.F.R. 214.2(h)(2)(i)(E).   (Pl. Mem. at 21.)   But that is not the issue before the Court.

 "The equitable remedy of *nunc pro tunc* (literally 'now for then') relief has a long and distinguished history in the field of immigration law … in mitigating potentially harsh results of the immigration laws."   *Edwards v. I.N.S.*, 393 F.3d 299, 308 (2d Cir. 2004). The remedy does not, however, have such a history as applied to the scenario presented here.   Plaintiffs thus do not provide any examples of courts granting *nunc pro tunc* relief in the context of an H-1B petition or for any other visa with an expired validity period. Instead, Plaintiffs cite to cases articulating the potential, but not guaranteed, availability of *nunc pro tunc* relief in inapt and exceptional circumstances.   *See Edwards*, 393 F. 3d at 308 (explaining an award of *nunc pro tunc* relief may ordinarily be available where agency error resulted in an "alien being deprived of the opportunity to seek a particular form of deportation relief" pursuant to a habeas petition); *Iavorski v. U.S. I.N.S.*, 232 F.3d 124, 130 n. 4 (2d Cir. 2000) (stating that the "equitable remedy of granting relief *nunc pro tunc*" may be available "in certain exceptional cases").

 To the contrary, courts have rejected visa application claims as moot where the requested validity period has expired.   In *International Internship Programs v. Napolitano*,

---

[10] To be sure, NGT did file an amended Form I-129 on March 1, 2010.  (Compl. ¶ 20.) The amendment, however, was to Deo's application status as an H-1B specialty worker following her re-entry into the country on a B-2 Nonimmigrant visitor visa; it did not contain any additional or new information.  (Compl. ¶ 21.)  On June 9, 2010, NGT filed a second amended H-1B petition solely for the purpose of including the required filing fee.  (Compl. ¶¶ 21-22.)  Thus, the original LCA and petitions in the record were never amended to include information beyond what was filed in the initial LCA and Form I-129.

the plaintiff brought an action alleging defendants (including the Secretary of the Department of Homeland Security and the Director of USCIS) violated the APA by denying its petitions for potential Q-1 cultural exchange visa recipients. 853 F. Supp. 2d 86 (D.D.C. 2012), *aff'd sub nom.*, 718 F.3d 986 (D.C. Cir. 2013). The defendants moved to dismiss the APA claims on the grounds that the claims were moot because the validity period of the visas were valid through January 24, 2012, and the Court was addressing the motion in March 2012. *Id.* at 95. In words that apply with similar force here, the Court held "[o]n the face of its complaint, plaintiffs APA claims are indisputably moot. Plaintiff sought injunctive and declaratory relief for Q-1 visas valid through January 24, 2012. As this date has long since passed, the Court is unable to grant any effectual relief."[11] *Id.* (internal citation omitted).

Courts have held similarly with respect to other types of visas. In particular, the Second Circuit, as well as other circuit courts of appeals, have found that challenges to the denial of a diversity visa status adjustment application becomes moot after the relevant fiscal-year period has expired because the district court can no longer provide meaningful relief. *See Mohamed v. Gonzales*, 436 F.3d 79, 81 (2d Cir. 2006) (collecting cases and acknowledging the harsh consequences of the statutes and regulations

---

[11] Like the H-1B visa, the Q-1 visa is an employment-oriented visa that allows one to come to the United States "temporarily to participate in an international cultural exchange program that provides practical training and employment." *Q Visa, Cultural Exchange*, U.S. Citizenship and Immigration Services (April 28, 2022), https://www.uscis.gov/forms/explore-my-options/q-visa-cultural-exchange. The process for acquiring one and its general structure parallels that of the H-1B visa. To obtain a Q-1 visa, a U.S. employer must simultaneously petition USCIS for Q-1 status by filing a Form 1-129, the cultural exchange program must meet requirements similar to those of the specialty requirements of an H-1B, and there is an explicit validity period for the visa of 15 months. 8 C.F.R. § 214.2(q)(3)(i)-(iii).

imposing a "strict one-year time limit on the granting of diversity visas" but finding "federal courts do not have the authority to hear these claims because … they are now moot"); *Ermuraki v. Renaud*, 987 F.3d 384, 386 (5th Cir. 2021) (holding plaintiffs' case was moot prior to entry of the district court's final judgment because the complaint was filed after the relevant fiscal year ended and stating, "This court has not yet addressed whether a claim challenging the denial of a diversity visa status adjustment application becomes moot after the relevant fiscal year expires. Our sister circuits, however, have overwhelmingly concluded that such a circumstance does moot the claim"); *Nyaga v. Ashcroft*, 323 F.3d 906, 916 (11th Cir. 2003) ("Because we conclude that Nyaga is no longer eligible to receive a visa, the district court could not provide meaningful relief to the Plaintiffs and the court was compelled to dismiss this case as moot.").

Plaintiffs contend that, unlike the statutes on diversity visas, the H-1B statutory provisions do not contain the same type of strict limitations on eligibility and do not preclude *nunc pro tunc* relief. (Pl. Mem. at 16, 18.) To support this position, Plaintiffs compare 8 U.S.C. § 1184(g), which contains the numerical caps for H-1B visas to be issued in a fiscal year, with 8 U.S.C. § 1154(a)(1)(I)(ii)(II), which states that "[a]liens who qualify, through random selection, for a visa … shall remain eligible to receive such visa only through the end of the specific fiscal year for which they were selected."[12] The Court is not persuaded. If anything, the comparison reinforces the notion that the H-1B statutes and regulations, like those governing diversity visas, place clear limits on when and how

---

[12] Plaintiffs incorrectly cite to 8 U.S.C. § 1154(a)(1)(G) for the provision "expressly preclud[ing] the issuance of a diversity visa after the expiration of fiscal year the alien is selected in lottery." (Pl. Mem. at 16.) The correct provision is 8 U.S.C. § 1154(a)(1)(I)(ii)(II); § 1154(a)(1)(G) pertains to alien classification and not the issuance of a diversity visa after the expiration of the fiscal year.

many individuals can be awarded an H-1B visa.  *See, e.g.*, 8 C.F.R. § 214.2(h)(9)(ii)(B) ("If a new H petition is approved after the date the petitioner indicates that the services or training will begin, the approved petition and approval notice shall show a validity period commencing with the date of approval and ending with the date requested by the petitioner, as long as that date does not exceed either the limits specified by paragraph (h)(9)(iii) of this section"); § 214.2(h)(9)(iii)(A)(1) ("An approved [H-1B] petition for an alien in a specialty occupation shall be valid for a period of up to three years but may not exceed the validity period of the labor condition application").

Plaintiffs have not presented the Court with any sound basis to distinguish H1-B visas from cultural exchange visas or diversity visa status adjustments with respect to mootness after the relevant validity period expires.  Accordingly, expiration of the October 2009 - September 2012 validity period for Plaintiffs' H1-B visa approval renders the instant case moot.

## B.   There Are No Available H-1B Visa Numbers For The Validity Period

The Court is additionally incapable of granting Deo's requested relief because there no longer are H-1B cap visa numbers available for the relevant years of Deo's petition.

"To fairly allocate" the limited number of H-1B visas, "the Department of Homeland Security has set up a strict regulatory framework."  *Espindola v. United States Department of Homeland Security*, No. 20-CV-1596, 2021 WL 3569840, at *1 (N.D.N.Y. Aug. 12, 2021).  8 U.S.C. § 1184(g) strictly limits the "total number of aliens who may be issued visas or otherwise provided nonimmigrant status during any fiscal year" to no more than

85,000 in each fiscal year following 2003.[13]  8 U.S.C. §§ 1184(g)(1)(A)(vii); 1184(g)(5)(C).

"[B]efore a petitioner can file an H-1B cap-subject petition for a beneficiary who may be

counted [toward the cap], the petitioner must register to file a petition on behalf of an alien

beneficiary electronically through the USCIS website."  8 C.F.R. § 214.2(h)(8)(iii)(A)(1).

If USCIS receives more registrations than the 85,000-cap permits, the agency closes the

registration period and selects recipients through a lottery.   8 C.F.R. §

214.2(h)(8)(iii)(A)(5)(i)-(ii).  If a registration is selected, the petitioner is notified that it is

eligible to file an H-1B cap-subject petition which "must be properly filed within the filing

period indicated on the relevant section notice." 8 C.F.R. § 214.2(h)(8)(iii)(D)(1)-(2).  An

alien is counted "for purposes of any applicable numerical limit" only when they are issued

a visa or granted non-immigrant status.  *See* 8 C.F.R. 214.2(h)(8)(ii)(A).

It is undisputed that the H-1B numerical cap for Deo's requested validity period

had been reached by December 2009.[14]  (Pl. Mem. at 4; Def. Mem. at 15.[15])  Deo did not

receive any of those numbers.  That is because, although her Initial Petition had been

approved, Deo failed to take the necessary steps – attending an interview and providing

required documentation at a consulate abroad – to obtain H-1B status in the fall of 2009

---

[13] 8 U.S.C. § 1184(g)(1) sets the cap of aliens who may be issued visas at 65,000 but (g)(5)(C) states the "numerical limitations contained in paragraph (1)(A) shall not apply to any nonimmigrant alien issued a visa or otherwise provided status … who has earned a master's or higher degree from a United States institution of higher education … until the number of aliens who are exempted from such numerical limitation during such year exceeds 20,000."  The additional 20,000 is known as the "master's cap."

[14]  *USCIS Announced FY 2010 H1B Cap Reached*, AILA (April 19, 2022), https://www.aila.org/infonet/uscis-fy10-h1b-cap-reached-updated-12-22-09.

[15] "Def. Mem." refers to Memorandum of Law in Support of the Defendants' Motion to Dismiss the Complaint (Dkt. 27).

or at any time thereafter.  And, as Deo was never issued a visa or provided non-immigrant status, she was not counted for the purposes of the numerical limit.

In seeking reinstatement of approval of Deo's H-1B status, Plaintiffs essentially ask this Court to ignore the Congressionally-set limits for H-1B visas.  Courts have declined to do exactly that.  For example, in *National Basketball Retired Players Association v. United States Citizenship & Immigration Service*, the plaintiff ("NBRPA") challenged USCIS's rejection of their April 6, 2016 Form I-129 filed on behalf of individual plaintiff Kurdadze to secure her H-1B status.  No. 16-CV-09454, 2017 WL 2653081, at *2 (N.D. Ill. June 20, 2017).  The Form I-129 listed Kurdadze's dates of intended employment as running from "10/1/2016" to "06/01/2019," but the LCA listed her period of intended employment as beginning "06/01/2016" and ending "06/01/2019."  *Id.*  USCIS rejected the Form I-129 on the basis that there was a discrepancy between the employment start dates listed on the Form I-129 and the LCA and that employers may not file the I-129 petition more than six months before the requested employment start date.  *Id.*; *see* 8 C.F.R. § 214.2(h)(9)(i)(B).  Following the rejection, NBRPA filed another petition and included documentation, stating that the agency's rejection was improper because the April 6, 2016 Form I-129 clearly listed October 1, 2016 as Kurdadze's employment start date, less than six months after the date of application.  USCIS nonetheless rejected Plaintiff's Form I-129 because the employment start date on the LCA was earlier than the approved October 1, 2016 date, and because "the H-1B cap for FY17 closed on April 7, 2016."  *Id.*

Plaintiff then sued, claiming that rejection of the April 6, 2016 petition was unlawful because USCIS did not act in accordance with its own regulations.  *Id.* at *3.  USCIS

moved to dismiss, arguing that the Court lacked subject matter jurisdiction because Plaintiffs' alleged injury was not redressable by the Court. *Id.* at *4. The Court granted Defendant's motion stating that "fiscal year 2016 ended on September 30, 2016, several days before plaintiffs even lodged the current suit. As a result, even if this Court were to order the USCIS to consider the April 2016 petition, that agency has no ability to issue H-1B visas or otherwise provide H-1B status for fiscal year 2016 presently (and, indeed, had no such ability when this case was filed)." *Id.* The Court admonished: "This Court cannot raise the numerical caps that Congress has set by statute." *Id.*; *see also Alpha K9 Pet Services v. Johnson*, 171 F. Supp. 3d 568, 580-81 (S.D. Tex. 2016) (finding plaintiffs lacked standing on redressability grounds, as "USCIS ha[d] already reached its statutory H-2B visa cap for the 2015 fiscal year" and the petitions at issue were filed for that fiscal year).

Plaintiffs argue, once again, that by relying on diversity visa cases, Defendants are attempting to apply wholly distinct statutory requirements to H-1B visas. (Pl. Mem. at 18-19.) But that argument ignores cases such as *NBRPA* where H-1B visas were directly at issue. And, as explained above in the context of expired validity periods, the principles stated in the cases addressing diversity visas are similarly applicable here. As the Ninth Circuit has explained in the context of Employment-Based Third Preference Category visas ("EB-3"):[16]

> [t]here is no statute or regulation authorizing [the Department of State] to take a visa number from one year and allocate it to another year. Just as in the diversity visa lottery program, the employment-based visa numbers available in a particular

---

[16] EB-3 visas are employment-based immigrant visas allocated to 'skilled workers,' 'professionals' or 'other workers' and are subject to an annual cap. *See* 8 U.S.C. § 1153(b)(3)(A)(ii); 8 U.S.C. § 1151(d).

> fiscal year expire at the end of the year, rendering moot any
> claim for a visa number from a prior year. It does not matter
> whether administrative delays and errors are to blame for an
> alien not receiving a visa number on time. Once a visa number
> is gone, it cannot be recaptured absent an act of Congress.

*Zixiang Li v. Kerry*, 710 F.3d 995, 1002 (9th Cir. 2013).  So too here; the cap for the

relevant years was exhausted long ago.  There is no relief the Court can order to

"recapture" even one of those for Plaintiffs.

Plaintiffs rely on a recently decided case, *Espindola v. United States Department

of Homeland Security*, to support the contention that the cases Defendants cite are

irrelevant.  2021 WL 3569840 at *1.  In *Espindola*, the employer plaintiff, Order Up

Analytics, received notice that its registration on behalf of beneficiary Plaintiff was

selected in the H-1B lottery process.  *Id.* at *2.  USCIS rejected the petition, however,

because it was missing a required signature page for Form I-129.  *Id.*  Plaintiffs

resubmitted the H-1B petition five times following the initial rejection, and all five were

rejected as untimely because they were received after the registration deadline.  *Id.*

Defendants asserted that the case was moot, arguing that the relief sought could

not be granted because USCIS had already completed the lottery and received petitions

necessary to reach the 85,000 cap.  The Court distinguished the diversity visa cases,

where caps had been reached, on the basis that the H-1B cap had not been reached for

fiscal year 2021.  As the Court explained, Defendants "merely received sufficient H-1B

petitions to issue the maximum number of visas" but had not actually issued the maximum

number.  Defendants therefore "still retain[ed] the power to issue H-1B visas in this fiscal

year" and thus did not "lack the statutory authority to grant the relief sought."  *Id.* at *3.

22

As is evident, *Espindola* is materially distinguishable from the case at hand where there is no dispute that the maximum number of visas allocated were awarded.

In sum, Plaintiffs' claim is moot not only due to expiration of the validity period, but also because the numerical cap for the relevant period was met.

## C.    The "Capable Of Repetition" Exception To Mootness Does Not Apply

Plaintiffs contend that this case falls within the exception to "for cases capable of repetition, yet evading review."  (Pl. Mem. At 24.)  The "capable-of-repetition doctrine applies only in exceptional situations."  *Spencer v. Kemna*, 523 U.S. 1, 17, 118 S. Ct. 978, 988 (1998) (internal citation and quotation marks omitted).  As the party asserting the exception, Plaintiffs must demonstrate both that "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *United States v. Juvenile Male*, 564 U.S. 932, 938, 131 S. Ct. 2860, 2865 (2011) (brackets omitted); *Doe v. Decker*, No. 18-CV-3573, 2019 WL 2513838, at *3 (S.D.N.Y. June 18, 2019).  Plaintiffs cannot do so, having failed to satisfy the "reasonable expectation" element.

Plaintiffs argue that the second element is satisfied because of the agency's "pattern of unscrupulous conduct" as well as its disregard for both the law and the District Court's order on remand.  (Pl. Mem. at 25.)  That argument is far too speculative.  Simply alleging that the agency has acted in ways unfavorable to Plaintiffs does not demonstrate that there is a reasonable expectation that the Plaintiffs will be subjected to the same actions again.  *See Dennin v. Connecticut Interscholastic Athletic Conference, Inc.*, 94 F.3d 96, 101 (2d Cir. 1996) (*"*mere speculation that the parties will be involved in a dispute

over the same issue does not rise to the level of a 'reasonable expectation' or 'demonstrated probability' of recurrence") (internal quotation marks omitted).

Plaintiffs essentially allege that the agency has an ongoing conspiracy against them and that it is evident "how future petitions filed by the Plaintiff/Petitioner would be treated by the agency." (Pl. Mem. at 28.) Besides recounting the prolonged factual history of the case, however, Plaintiffs do not set forth any factual basis for the claim that they will be victimized again. That is not a sufficient showing to invoke the exception. *See*, *e.g.*, *Ramos v. New York City Department of Education*, 447 F. Supp.3d 153, 158-59 (S.D.N.Y. 2020) (exception did not apply where parent failed to show there was a reasonable likelihood that Department of Education would fail to provide for pendency payment in the future merely because it had failed to do so for the prior year); *Smith v. New Haven Superior Court*, No. 3:20-CV-00744, 2020 WL 4284565, at *4 (D. Conn. July 27, 2020) (exception did not apply absent any indication of a reasonable expectation that the petitioner would again be subjected to overcrowding and exposure to COVID-19 positive prisoners even though authorities had the ability to freely transfer the petitioner between facilities prior to the full litigation of his claims); *Pierre-Paul v. Sessions*, 293 F. Supp. 3d 489, 492 (S.D.N.Y. 2018) (exception did not apply where petitioner could not point to any facts indicating that ICE would detain her again despite having been detained and released by ICE on three previous occasions).

For the duration element, Plaintiffs state "[it is] clearly fulfilled since the initial[ ] validity period has expired, proving far too short to pursue the matter to its conclusion in litigation." (Pl. Mem. at 24-25) (citing *In re Zarnel*, 619 F. 3d 156, 164 (2d Cir. 2010) (cleaned up).) Indeed, Plaintiffs have been, in one way or another, litigating this case for

over ten years.  The case was appealed and remanded within the Agency several times, and this is the second time the case is before the District Court.  Given that timeline coupled with the strictly limited three-year validity period, the facts of this case suggest satisfaction of the duration element.  However, the exception does not apply unless Plaintiffs can satisfy both prongs, which, as explained above, they cannot do.  *See New Jersey Carpenters Health Fund v. Novastar Mortgage Inc.*, 753 F. App'x 16, 20 (2d Cir. 2018) (providing no analysis of duration prong because plaintiffs did not meet second element of the exception and thus case was moot); *Video Tutorial Services, Inc. v. MCI Telecommunications Corp.*, 79 F.3d 3, 6 (2d Cir. 1996) (exception did not apply where plaintiffs satisfied first element due to quick expiration of temporary stay of arbitration but did not satisfy the second element); *F.O. v. New York City Department of Education*, 899 F. Supp. 2d 251, 255 (S.D.N.Y. 2012) ("Even assuming that Plaintiffs have shown that this issue would evade review due to its short duration, there is no reasonable expectation that Plaintiffs here would be subject to the same action again") (internal quotation marks omitted).

Accordingly, the capable of repetition exception does not apply, and Plaintiffs' claims are moot.

### III.  Dismissal For Failure To State A Claim

In addition to arguing lack of subject matter jurisdiction, Defendants contend that Plaintiffs' claims should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim for relief.  They advance three arguments in support: (1) the government cannot violate the limit on the number of H-1B visas that may be issued; (2) the Court cannot order

Defendants to reinstate Deo to H-1B status; and (3) Deo cannot receive H-1B status immediately.  (Def. Mem. at 21-23.)

Having determined it does not have subject matter jurisdiction, however, the Court does not separately address whether dismissal is appropriate under Rule 12(b)(6).  *See Sinochem International Co. v. Malaysia International Shipping Corp.*, 549 U.S. 422, 430-31, 127 S. Ct. 1184, 1191 (2007) ("a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)"); *Solis v. 666 Fifth Associates LLC*, No. 20-CV-5105, 2021 WL 5998416, at *2-3 (S.D.N.Y. Dec. 20, 2021) (dismissing complaint as moot under 12(b)(1) and therefore not addressing 12(b)(6) arguments);  *Juca v. Carranza*, No. 19-CV-9427, 2020 WL 6291477, at *3 n.1 (S.D.N.Y. Oct. 26, 2020) ("Because the Court concludes that Plaintiffs' claim must be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction [due to mootness], the Court does not evaluate whether Plaintiffs failed to state a claim pursuant to Rule 12(b)(6)").[17]

## Conclusion

For the foregoing reasons, I recommend Defendants' motion be GRANTED for lack of subject matter jurisdiction and the case dismissed without prejudice.

---

[17] Defendants additionally argue that the Court should dismiss Plaintiffs' due process challenge.  The Complaint alleges that Defendants have violated their rights to notice and opportunity to respond, i.e. their due process rights, because Defendants "continue to raise new issues to which Plaintiffs had previously respond[ed] and were unaware were under scrutiny." (Compl. ¶¶ 213-15.)  Defendants separately address the point apart from mootness, and Plaintiffs do not contest the point in opposition.  As a result, Plaintiffs have waived any opposition to the point.  *See BYD Company Ltd. v. VICE Media LLC*, 531 F. Supp.3d 810, 821 (S.D.N.Y. 2021), *aff'd*, No. 21-1097, 2022 WL 598973 (2d Cir. Mar. 1, 2022) ("Plaintiffs' failure to oppose Defendants' specific argument in a motion to dismiss

**<u>Procedures For Filing Objections And Preserving Appeal</u>**

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of Court, with extra copies delivered to the Chambers of the Honorable Paul G. Gardephe, U.S.D.J., United States Courthouse, 40 Foley Square, New York, NY 10007, and to the Chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, NY 10007.  **Failure to file timely objections will result in a waiver of objections and will preclude appellate review.**

Respectfully submitted,

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: May 12, 2022

Copies transmitted to all counsel of record.

---

is deemed waiver of that issue") (quoting *Kao v. British Airways, PLC,* No. 17-CV-0232, 2018 WL 501609, at *5 (S.D.N.Y. Jan. 19, 2018); *Arista Records, LLC v. Tkach,* 122 F. Supp.3d 32, 38-39 (S.D.N.Y. 2015) (same).  As discussed above, however, the Court has found subject matter jurisdiction to be absent and therefore does not separately address the merits of Plaintiffs' due process challenge.